IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID L. JOHNSON, JR.,

        Plaintiff,                      No. CIV 2:11-cv-2578-MCE-JFM (PS)

    vs.

OFFICEMAX, INC.,

        Defendant.                  FINDINGS & RECOMMENDATIONS

_____/

        On December 1, 2011, the court held a hearing on defendant OfficeMax, Inc.'s October 6, 2011 motion to dismiss. Timothy S. Anderson appeared for defendant. Plaintiff did not make an appearance. Upon review of the motion and the documents in support and opposition, discussion with counsel and good cause appearing therefor, the court finds as follows:

FACTUAL AND PROCEDURAL BACKGROUND

        On September 9, 2011, plaintiff, who is African American, took his personal computer to a computer repair shop because it had crashed the day prior. That morning[1],

---

[1] It is unclear whether the incident at issue occurred on September 9, 2011 or September 10, 2011. The complaint refers to the morning of September 9 whereas the attachments to plaintiff's complaint refer to September 10 as the operative date. Compare Compl. ¶ 2 with Compl., Ex. B (email from plaintiff to OfficeMax representatives (Sept. 10, 2011)).

1

plaintiff, his wife and young daughter visited an OfficeMax retail store in Davis, California to "browse[]" the laptop computers. While inspecting the laptops and over the course of three minutes, three OfficeMax employees asked plaintiff if he needed assistance. After telling them repeatedly that he did not need help, one of the employees said to him, "You are loitering...please leave the store now if you are not making a purchase. Get out!" They also said, "You're loitering, you must leave leave [sic] our store now or we're calling the cops on you!" During this time, plaintiff's daughter was frightened by the employees' behavior and had to be escorted out of the store by plaintiff's wife. Plaintiff also left the store shortly thereafter. Plaintiff avers that the employees were motivated by racial animus. Plaintiff, who is an author, asserts that he and his family have suffered mental distress and loss of potential income due to the incident and seeks $1.65 million in damages.

      On August 18, 2011, plaintiff filed the instant action in the Yolo County Superior Court against OfficeMax for violations of 42 U.S.C. §§ 1981 and 1983. This action was removed to this court on September 30, 2011. On October 6, 2011, defendant filed a motion to dismiss. On October 11, 2011, plaintiff filed an opposition. On November 18, 2011, defendant filed a reply.

## STANDARDS

      The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1974 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

/////

1   In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

The court is permitted to consider material properly submitted as part of the complaint, documents not physically attached to the complaint if their authenticity is not contested and the complaint necessarily relies on them, and matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). Matters of public record include pleadings and other papers filed with a court. Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

DISCUSSION

A.   42 U.S.C. § 1981

Defendant seeks dismissal of plaintiff's Section 1981 claim on the ground that plaintiff fails to state a prima facia case of discrimination.

Section 1981 "protects the right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race." Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 475 (2006) (quoting § 1981(a)). Making and enforcing contracts includes "'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" Id. (quoting § 1981(b)). "Any claim brought under § 1981, therefore, must initially identify an impaired contractual relationship under which the plaintiff has rights." Id. at 479 (internal quotation omitted). A plaintiff "cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes to make or enforce." Id.

/////

While Section 1981 is generally invoked in the employment context for, e.g., claims of hostile environment, failure to promote, or wrongful dismissal, litigants have also brought suit under the statute for claims of discrimination in retail and service settings. In Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138 (9th Cir. 2006), a case of first impression, the Ninth Circuit recognized a Section 1981 claim for discrimination in nonemployment contracts. Id. at 1144. The Lindsey court adopted the standards set out by the Sixth and Seventh Circuits for establishing a prima facie case of discrimination in nonemployment contracts. Lindsey, 447 F.3d at 1145. To establish a prima facie case, plaintiff must show: "(1) [he] is a member of a protected class, (2) [he] attempted to contract for certain services, and (3) [he] was denied the right to contract for such services." Id. at 1145 (citing Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 872 (6th Cir. 2001), and Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 176 (7th Cir. 1996)).

Like the Lindsey court and the Sixth and Seventh Circuits, this court applies the burden-shifting framework announced by the Supreme Court in McDonnell Douglas to plaintiff's claim of discrimination under § 1981. 411 U.S. 792, 802-04 (1977). See also Lindsey, 447 F.3d at 1144. Thus, the plaintiff has the initial burden to establish a prima facie case of discrimination in violation of his civil right to make and to enforce contracts. Lindsey, 447 F.3d at 1144. If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff. McDonnell Douglas, 411 U.S. at 802-04. Finally, if the defendant carries its burden, the plaintiff must prove by a preponderance of the evidence that the defendant's reasons were merely a pretext for discrimination. Id.

1. Member of Protected Class

Plaintiff clearly satisfies the first McDonnell Douglas requirement by alleging that he is African-American and, thus, a member of a protected class.

/////

2. <u>Engaged in Protected Activity</u>

As to the second requirement, plaintiff asks this court to find that he was attempting to contract for services while browsing laptop computers for three minutes while in OfficeMax. Defendant argues that plaintiff's Section 1981 claim fails because he was not engaged in protected activity.

Whether a customer's browsing of products in a retail store constitutes "mak[ing] and enforc[ing] contracts" is a question that has not been addressed by the Ninth Circuit. Similar questions have, however, been addressed by other circuit courts, including the First, Fourth, Fifth, Sixth and Tenth Circuits. See <u>Garret v. Tandy Corp.</u>, 295 F.3d 94, 100 (1st Cir. 2002); <u>Williams v. Staples, Inc.</u>, 372 F.3d 662, 667-68 (4th Cir. 2004); <u>Morris v. Dillard Department Stores</u>, 277 F.3d 743, 752 (5th Cir. 2001) (no contractual interest was lost where plaintiff left store of her own accord without attempting to make a purchase); <u>Christian v. Wal-Mart Stores, Inc.</u>, 252 F.3d 862, 872 (6th Cir. 2007) (cause of action existed because plaintiff was asked to leave the store after being accused of shoplifting and could therefore not complete her purchase); <u>Hampton v. Dillard Department Stores, Inc.</u>, 247 F.3d 1091, 1117-18 (10th Cir. 2001), cert. denied, 534 U.S. 1131 (2002).

These courts have held that a customer is attempting to contract for services when he or she is waiting in line to purchase goods, <u>Williams</u>, 277 F.3d at 668; when he or she has selected items for purchase, had the means to purchase and would have purchased had he or she not been kicked out of the store, <u>Christian</u>, 252 F.3d at 872; or when he or she had more than a speculative interest in purchasing an item, <u>Morris v. OfficeMax, Inc.</u>, 89 F.3d 411, 414 (7th Cir. 1996). Dampening a customer's ardor to effectuate a contract, however, is not an actual loss of a contractual interest upon which relief can be granted. <u>Garret</u>, 295 F.3d at 102. Furthermore, a general intent to purchase items or to consider items at a store is not considered an attempt to contract. See <u>Brown v. Mydatt Services, Inc.</u>, 2008 WL 1925041 (D. Or. 2008).

/////

In <u>Morris</u>, a case similar to the instant one, the plaintiffs were two African-American patrons at an OfficeMax store. 89 F.3d 411. While the two men were looking at time-stamp machines, the store's assistant manager called the police and reported two black males purportedly acting suspiciously. When police officers arrived in response to the call, the plaintiffs showed identification and answered questions posed by the officers. The police officers then apologized and left. The plaintiffs filed a lawsuit and the district court granted summary judgment for OfficeMax. The court "found that the plaintiffs failed to produce any evidence to suggest that OfficeMax interfered with their right to make further purchases or to enter into a retail contract."

The Seventh Circuit affirmed, stating that the plaintiffs "cannot point to specific facts showing that OfficeMax deprived them of any of the enumerated rights in § 1981 and, specifically, the right to make and enforce a contract." <u>Morris</u>, 89 F.3d at 414. The court stated that the plaintiffs "were denied neither admittance nor service, nor were they asked to leave the store." <u>Id.</u> at 414. The Seventh Circuit rejected the plaintiffs' argument that "the store discouraged and dissuaded them from making the purchase," noting that the plaintiffs failed to demonstrate that they would have attempted to make a purchase even if they had not been approached by the police. <u>Id.</u> In other words, according to the court, the plaintiffs "failed to demonstrate that they would have attempted to purchase the time stamps" if they had not been approached by the police. <u>See id.</u> The Seventh Circuit stated that a "claim for interference with the right to make and enforce a contract must allege the actual loss of a contract interest, not merely the possible loss of future contract opportunities." <u>Id.</u> at 414-15.

Here, plaintiff alleges that after dropping off his computer at the computer repair shop, he and his wife were browsing laptop computers at the OfficeMax store when he was approached multiple times by multiple OfficeMax employees before finally being told to leave if he was not going to make a purchase. Plaintiff asserts that he "communicated [his] desire to make a purchase by shopping, showing interest and examining the features of the various laptops

6

. . . ." Opp'n at 2.  Plaintiff contends that he was denied the option of making a purchase because defendant's employees essentially kicked him out of the store.

Like the <u>Morris</u> plaintiffs, however, plaintiff's claim that he was denied the opportunity to purchase by being kicked out of the store fails as speculative and insufficient because plaintiff does not demonstrate that he would have attempted to make a purchase even if he was not ejected from the store.  <u>See</u> 89 F.3d at 414.  Although the employees' directive that plaintiff exit the store lest he purchase an item appears superficially to deprive plaintiff of the opportunity to make a purchase, the fact remains that plaintiff has failed to allege that he had anything more than a speculative interest in any item.  <u>See</u> <u>Morris</u>, 89 F.3d at 414.  The allegations do not show that plaintiff suffered an actual loss of a contract interest; rather, the allegations only establish that plaintiff suffered a possible loss of a future contract opportunity.  This is insufficient to state a prima facie case under Section 1981.

       3.    <u>Discriminatory Intent</u>

Lastly, plaintiff asserts that he was discriminated against on account of his race.  Defendant argues that plaintiff fails to plead facts demonstrating that the OfficeMax employees acted out of racial animus.  Plaintiff does not address this argument in his opposition.

Defendant argues that the complaint merely states that plaintiff and his fiancee were accused of loitering and were asked to leave the store unless they were going to make a purchase.  Although the complaint states that there were no other African-American customers in the store and that the city of Davis's African-American population is one percent, defendant contends these factors are irrelevant to the motivation of its employees.  Insofar as plaintiff claims that none of the other white customers were approached by the employees, plaintiff does not allege that they were browsing the Internet like he was.  Thus, defendant argues that they are not similarly situated for purposes of Section 1981 analysis.  The court, however, does not find dismissal on this ground warranted because the complaint does state that two customers in the same section were also browsing but were not approached by the employees.

1  Nonetheless, based on the foregoing, plaintiff's Section 1981 claim should be
2  dismissed for failure to show that plaintiff was engaged in a protected activity. This dismissal
3  should be without leave to amend.

B.  42 U.S.C. § 1983

Defendant also seeks dismissal of plaintiff's § 1983 claim because neither it nor its employees are state actors or were acting under color of state law. Plaintiff does not address this argument.

To state a claim for relief under section 1983, Johnson must plead two essential elements: (1) that the individual defendants acted under color of state law; and (2) that they caused him to be deprived of a right secured by the Constitution and laws of the United States." Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997). A person acts under color of state law if he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Section 1983 "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). Indeed, "[p]rivate parties are not generally acting under state law." Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991). Here, there is no allegation that defendant or its employees are state actors.

Sometimes, however, private conduct may amount to state action. The Supreme Court has articulated four distinct tests for determining whether the actions of a private individual amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. Lugar v. Edmondson Oil Co., 457 U.S. 922, 939 (1982); see also Johnson v. Knowles, 113 F.3d 1114, 1118 (9th Cir. 1997).

To satisfy the public function test, the private actor must be "functioning as the government." Gorenc v. Salt River Project Agric. Improvement & Power Dist., 869 F.2d 503,

508 (9th Cir. 1989). Here, plaintiff cannot make a claim that defendant functioned as the government by threatening to call the police. Calling the police is an action commonly performed by private citizens. See, e.g., Johnson v. Miller, 680 F.2d 39, 40 (7th Cir. 1982) (noting that "[t]o file a criminal complaint with the police is the act of a private citizen").

The joint action test for state action may be met where a private person is a "willful participant in joint action with the State or its agents." Peng v. Penghu, 335 F.3d 970, 980 (9th Cir. 2003). Although a private party may be regarded as a state actor if he conspires with law enforcement officials, there is no claim here that defendant engaged in a conspiracy with any police officer or other government official.

State action may be found under the state compulsion test where the state has "exercised coercive power or has provided such significant encouragements, either overt or covert, that the [private actor's] choice must in law be deemed to be that of the state." Johnson v. Knowles, 113 F.3d 1114, 1119 (9th Cir. 1997). Plaintiff does not claim that the police provided such significant encouragements to defendant, either overtly or covertly.

Finally, under the nexus test, the court must consider whether there is a "sufficiently close nexus between the state and the [defendant] so that the action of the latter may be fairly treated as that of the state itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974). There is no authority suggesting that calling the police to report a suspected crime may create a "sufficiently close nexus" between defendant and the police. Instead, the Ninth Circuit has expressly held that "merely complaining to the police does not convert a private party into a state actor .... [n]or is execution by a private party of a sworn complaint which forms the basis of an arrest enough to convert the private party's acts into state action." Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989). In fact, courts have repeatedly held that a private citizen does not become a "state actor" under Section 1983 by making a complaint to the police. See, e.g., Davis v. Union Nat'l Bank, 46 F.3d 24, 25-26 (7th Cir. 1994); Collins v. Womancare, 878 F.2d 1145, 1155 (9th Cir. 1989); Arnold v. IBM, 637 F.2d 1350, 1357-58 (9th

Cir. 1981). These holdings includes cases in which a Section 1983 plaintiff maintained that a private citizen had made false allegations to the police. For instance, in Peng v.. Penghu, 335 F.3d 970 (9th Cir. 2003), the plaintiff sought to bring a Section 1983 suit against his sister and her son based on allegations that they had given false statements to a deputy, which caused plaintiff's arrest. Id. at 972. The district court dismissed the claims against the sister and her son because the plaintiff had not demonstrated that they were state actors, and the Ninth Circuit affirmed this dismissal. Id. at 980.

The court therefore finds that plaintiff fails to allege that defendant is a state actor, a necessary prerequisite for Section 1983 liability. The court further finds that under none of the four tests articulated above can plaintiff state that defendant acted under color of state law. Accordingly, this claim should be dismissed without leave to amend.

Based on the foregoing, IT IS HEREBY RECOMMENDED that defendant's motion to dismiss be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 8, 2011.

UNITED STATES MAGISTRATE JUDGE

/014;john2578.mtd